94 563
101 444

## JOHN HENSEL v. MARGARET MAAS.

*Principal and agent—Extent of authority—Evidence—Instructions to jury.*

1. The authority of an agent to make a sale of specific property, given six months prior to the sale, will be presumed to have continued until the time of the sale, in the absence of contrary proof.

2. It is error to admit testimony of the statements of an agent, well calculated to induce the belief that his authority is unlimited, and at the same time exclude testimony offered by the principal to show its real extent.

3. If the authority of an agent to make a sale of property is not continuous, it is error for the court to refer to a conversation had with the principal six months before the sale, in which, as claimed, such authority was admitted, and instruct the jury that the right to recover depends upon the existence of authority at that time.

Error to Wayne. (Gartner, J.) Argued January 6, 1893. Decided February 10, 1893.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Charles C. Stewart,* for appellant, contended:

1. Where one is to be held for the acts of another as his agent,

the agency must be clearly shown; and there is no inference to be drawn that a special agent once employed has been employed again; citing *Campbell v. Sherman,* 49 Mich. 534, 536.

*Charles Flowers,* for plaintiff.

MONTGOMERY, J.    The plaintiff brought this action to recover compensation alleged to be due him as a real-estate agent for making the sale of a piece of land in the city of Detroit, belonging to defendant.    The defendant is a widow lady, a German, and does not speak English.    She was living on the land in question in April, 1891, when the plaintiff and one Maedje called upon her for the purpose of ascertaining if the property was for sale, and, as is claimed by the plaintiff, for the purpose of obtaining the agency for selling it.

Maedje testified in relation to the conversation which occurred as follows:

" Mr. Hensel introduced himself to her, and asked her whether she wanted to sell the property; that he was looking for some property; he had some buyers for some.    She said, well, they concluded to sell, but she could not attend to the selling, and the making out of papers, and so forth. She did not understand that, and she put everything in the hands of her son, Joseph P. Maas, on Gratiot avenue, and anything we would do with him would be satisfactory in every sense.    She referred right direct to him, and told us to go there to him, and anything that he did would be satisfactory to her."

Plaintiff testified to this same conversation as follows:

" I told her that I heard she wanted to sell her land, and I had just two men on hand looking for a piece of property.

"*Q.* What was said?

"*A.* I went with Maedje to her, and asked her if she wanted to sell the property.    She said she wanted to sell the property, but she had given it to Joseph Maas, and had nothing further to do with it."

Defendant's testimony was as follows:

" They came in and asked me whether the land was for sale,

and I answered that the land was for sale, and then they asked me the price, and I told them $20,000. They told me it was a good deal too much; that I could never get that much for the land. They told me if they bought the land they would plat it, and lay it out in lots; and I told them I did not understand anything about that business, and they should go to Joe, and speak to him about it."

The witness Maedje also went with the plaintiff to see Joseph Maas, and testified as follows:

"We explained that we had been to see his mother, and that she had referred us to him. He said: 'Well, that is all right; but for the present I hardly think that I will sell. I have concluded to wait a little while, but whenever I do conclude to sell, why, you folks will have the first chance to sell it. I will let you know.'"

The plaintiff gave substantially the same testimony as to the interview with Mr. Joseph Maas, and testified further that the following November he met Joseph Maas, and that the following occurred:

"Mr. Maas told me that he was going to Mr. Potter; that he wanted to sell his land; and he told us, 'All right, if you have a man that wants the land, it is going to be sold,' and in that case he would not go to Mr. Potter. I then said, 'Let us go in here, and make a kind of writing of this;' and he said, 'That is not necessary,' because his word was as good as his writing.

"Q. What was said about the price?
"A. $16,000; anything above that should go to us."

Joseph Maas denies this conversation, and testifies that he told the plaintiff that no commission could be allowed him on the sale.

The plaintiff called John W. Fox as a witness, for the purpose of showing that plaintiff had made a bargain with him to sell the land, and, against the objection of defendant's counsel, he was permitted to testify to a conversation with Joseph Maas, as follows:

"I spoke of going up to see Mrs. Maas, and Mr. Maas

said, 'It is no use to go up to see my mother; she would simply refer you back to me;' that whatever he did in the matter was right."

The defendant offered to show by her own testimony, and the testimony of her son, Joseph Maas, the extent of the authority in fact conferred by her upon Joseph Maas. This was excluded, and the refusal to admit this testimony is one of the grounds of error relied on.

The circuit judge charged the jury, in response to request by defendant's counsel:

"An agent's authority cannot be presumed to last indefinitely, and evidence that he had power to make a contract relative to selling property is not proof that he had such authority six months later."

And, on his own motion, the judge charged the jury as follows:

"The first question you will have to determine is as to whether Joseph Maas, the defendant's son, had authority to make this contract. Upon that question you are to take into consideration all the testimony in this case. You will remember the testimony of the plaintiff, and also of Mr. Maedje, as to what took place when they first called upon the old lady in reference to securing this property for sale. It will be for you to say as to whether their version is correct, and, if correct, as to whether she held out at that time that her son had authority to make the contract, and the property was placed in his hands for sale, and that she had made him her agent for dealing with reference to this property, and it will be for you to say whether he did have authority, under those circumstances, to make the contract in question."

We are not able to see how these two propositions can stand together. If the authority which the agent in fact had was not continuous, certainly it was error to refer to a conversation which occurred six months prior to the alleged service, and make the right to recover depend upon the existence of authority at that time.

Next, it was stated in response to the request. by the defendant:

"No contract made by plaintiff with defendant's son would bind defendant unless defendant's son actually had authority to make such contract."

This request was given with the following modification:

"If, by reason of any conversation which happened between the plaintiff and defendant, she held out that her son had authority to make a contract of this kind, why, then whether any express authority would be shown or not would not change the matter: In other words, if she held out that he had authority to make a contract of this nature, no matter whether he had any express authority from her or not, it would not change it; she would be liable in both instances."

And, in another place in the charge, the judge says:

"So the real questions for you to determine will be as to whether Joseph Maas had authority to make this contract, first; in the second place. as to whether a contract was made; and, in the third place, as to whether that contract was carried out and executed."

These instructions, when taken in connection with the admission of the testimony as to statements of Joseph Maas bearing upon the question of his authority, above quoted, were well calculated to mislead the jury. The court had refused to permit testimony of defendant as to the nature of the authority which defendant had conferred upon her son. The admission of the alleged statement, which was calculated to induce belief that authority was unlimited, could not have failed to have its effect upon the jury, as the charge clearly left the question of whether authority in fact existed with the jury. Even if this testimony had been admissible as a part of the *res gestae*, under the ruling in *Haughton v. Maurer*, 55 Mich. 323, as bearing upon the question of whether there was in fact authority, it was certainly not conclusive, and it was

damaging error to admit it, and at the same time to exclude testimony as to what was in fact the authority of Joseph Maas. It is evident that the circuit judge started out with the purpose of keeping the parties to the question of whether there was a holding out to the plaintiff of Joseph Maas as an agent having authority to make the contract alleged. This course was proper if it had been adhered to, but it made it necessary that extreme care should be exercised in excluding testimony which the jury might construe as tending to show authority in fact, and in excluding, by the charge, any such theory from the consideration of the jury.

As the case must go back for a retrial, we think it proper to add that the learned circuit judge, in our opinion, gave an instruction too favorable to defendant, in stating that the evidence that Joseph Maas had power to make a contract relative to the selling of the property is not proof that he had such authority six months later. We think that the authority, relating, as it did, to the sale of specific property, might be presumed to continue, in the absence of any proof to the contrary. It was, of course, competent for the defendant to show a revocation of authority by her, and testimony, if offered for this purpose, should have been received.

For the errors pointed out, the judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.