## JOHN HENSEL v. MARGARET MAAS.

[See 94 Mich. 563.]

*Principal and agent—Extent of authority—Instructions to jury.*

1. Where application is made to a land-owner by a person known to her to be a real-estate broker, or who so represents himself at the time, to have the land placed in his hands for sale, and the land-owner refers the broker to her son to act for her with respect to such employment, she will be liable to the broker upon the contract made with the son regarding such employment.

2. If, however, the applicant was not known to the land-owner prior to the application, and did not represent himself as a real-estate broker, but, instead, held himself out as a would-be purchaser of the land, and thereupon the land-owner referred him to her son for the terms and conditions of the sale, such a holding out would not justify the broker in assuming that the son had authority to enter into a contract for his mother with him to find a purchaser of the land.

3. The charge is held to have been well calculated to mislead the jury, in that it was without qualification as to the reference of the matter of the sale of the land to the son, which fact

was conceded, but the important issue was as to the character and effect of such reference.

Error to Wayne. (Donovan, J.) Argued June 20, 1894. Decided July 10, 1894.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion, and in 94 Mich. 563.

*Charles C. Stewart,* for appellant.

*Charles Flowers,* for plaintiff.

McGRATH, C. J. This case is here for the second time. 94 Mich. 563. Defendant appeals.

It will be remembered that the suit is brought to recover a commission for the sale of certain real estate. The principal question, upon which there is a conflict in the evidence, is as to whether there was a holding out to the plaintiff of Joseph Maas as having authority to make the alleged contract.

Plaintiff testifies that in the spring of 1891 he called upon defendant, at her residence, and said to her that—

"I heard that she wanted to sell her land. She told me to go to her son Joe, and whatever he does was right. * * * I went in, and told her I heard she wanted to sell the land. She referred me to her son. * * * I went with Mr. Maedje to her, and asked her if she wanted to sell the property, and she said 'Yes,' but she had given it to her son, Joseph Maas. She had nothing further to do with it."

Maedje testifies that—

"Mr. Hensel introduced himself to her, and asked her whether she wanted to sell the property; that he was looking for some property,—he had some buyers for some. She said, well, they concluded to sell, but she could not attend to the selling, and the making out of papers, and so forth. She did not understand that, and she put everything in the hands of her son, Joseph P. Maas, on Gratiot avenue, and anything we would do with him would be satisfactory,

in every sense. She referred right direct to him, and told us to go there to him, and anything that he did would be satisfactory to her."

These parties testify that they went at once to see Joseph Maas, and explained to him that defendant had referred them to him. He, however, told them that he had concluded not to sell for the present, but, "whenever I do conclude to sell, why, you folks will have the first chance to sell it. I will let you know." Nothing further occurred until six months later, when plaintiff met Joseph Maas in the street, and asked about the property, when it is alleged that Joseph Maas stated to plaintiff that the price of the property was $16,000, and if plaintiff procured a purchaser he (plaintiff) could have what he could get over and above that sum as his commission.

The defendant, however, testifies that she met plaintiff at her house in May, 1891; that she had not known him prior to that time; that Hensel and Maedje asked her if the land was for sale, and she said "Yes;" that they asked her the price, and she said "$20,000;" that they said that was too much,—that they wanted to buy it, but they thought the price was too high; that "they spoke about buying it, and asked about the size of the property, and spoke about contracts, and so I referred them to Joseph Maas."

It is clear that if plaintiff was known to defendant as a real-estate broker, or so represented himself to defendant, and applied to her to have the property placed in his hands, and she referred him to her son to act for her with respect to such employment, the defendant is liable to plaintiff upon the contract. If, however, plaintiff was not known to the defendant prior to the application to her, and did not represent himself to her as a broker, but, instead, held himself out as a would-be purchaser, and thereupon defendant referred him to her son for the terms

and conditions of the sale, such a holding out would not justify plaintiff in assuming that her son had authority to enter into a contract for her with plaintiff to find a purchaser. The authority suggested by the holding out in such case would be special, and not general. The authority to make the terms and conditions of a sale of the property would not include the authority to make a contract with a third party for a large commission for finding a purchaser.

The trial court evidently introduced into his charge to the jury several requests submitted by both parties, and there is an incongruity in the charge, as a whole, which was calculated to mislead the jury. The court said:

"If you find from the evidence that Mrs. Maas referred the plaintiff to her son, and said that the son could act for her in the matter, then she thereby made her son her agent in that matter, and the son could bind her until that authority had been revoked. *. * * * * *

"If Joseph Maas gave authority to Hensel, after this reference to him, to sell the land for $16,000, during the term of his agency, or while that agency continued to Joseph Maas, if you find such, and told him that all he could get over and above that sum would be his, the defendant, Mrs. Maas, would be bound by that contract. * * * * * * * * * * * *

"I charge you, on the other hand, however, that if the defendant ever gave her son authority to sell the property, and gave him the price at which he could sell it, that would not authorize him to bind her by any contract of service with other parties. * * * * * * *

"Legally, when she referred the matter to her son, if she had so placed the matter in his hands, to act for her, she would be bound by that action. * * * * *

"Now, if Mrs. Maas did refer to Joseph Maas, then I charge you that she was liable for the contracts made in connection with that particular property, and the sale of it, with Mr. Hensel."

It was conceded that defendant did refer plaintiff to her son. The important issue in the case was the character and effect of the holding out. Did defendant refer plaint-

iff to her son as having authority to make the terms and conditions of a sale to him of the property, or did plaintiff represent himself as a broker seeking a contract to find a purchaser? The trial court's instructions were without qualification in this respect, and were erroneous.

The judgment is reversed, and a new trial granted.

LONG, GRANT, and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.